IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STACEY L. H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-00214-C-BT |
| | § | |
| KILOLO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY,[1] | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Stacey L. H.'s[2] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 3). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

---

[1] Ms. Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The Court directs the Clerk to amend the docket to reflect this change.

[2] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## Background

Plaintiff alleges that she is disabled due to psoriatic arthritis, osteoarthritis, spine disorder, depressive disorder, and asthma. Admin. R. (A.R.) pt. 1, at 22 (ECF No. 15-1). She was born in 1966 and was 50 years old on her alleged disability onset. *Id.* at 25. Plaintiff has a college degree and can communicate in English. *Id.*; A.R. pt. 2, at 748 (ECF No. 15-2). Plaintiff has past work experience as an accounts-payable clerk and an insurance agent. A.R. pt. 1, at 17.

On December 28, 2016, Plaintiff applied to Social Security for disability benefits. *Id.* After her application for disability-insurance benefits was denied initially and upon reconsideration by the Commissioner, Plaintiff requested a hearing before an administrative law judge (ALJ) to determine whether Plaintiff is disabled. *Id.* The hearing took place in Dallas, Texas, on July 19, 2018. *Id.*

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. *Id.* At step one of the five-step sequential evaluation,[3]

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d

the ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 2016. *Id*. at 19. At steps two and three, the ALJ found that Plaintiff had severe impairments of psoriatic arthritis, osteoarthritis, spine disorder, depressive disorder, and asthma, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id*. at 20. At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work but Plaintiff could not perform her past work. *Id*. at 21-25. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could work as an assembler, a price marker, or an automatic machine operator—jobs that exist in significant numbers in the national economy. *Id*. at 17, 26.

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id*. at 8. The Council denied review. *Id*. Plaintiff then filed this action in federal district court, in which she contends the ALJ erred in finding her not disabled. Specifically, Plaintiff argues that the ALJ's disability determination and denial of benefits is not supported by substantial evidence. Pl.'s Br. 1 (ECF No. 20).

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard."

---

55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

*Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)) (citation and internal quotation marks omitted)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support his decision. *Copeland*, 771 F.3d at 923 (citation omitted).

## Analysis

Plaintiff argues substantial evidence does not support the ALJ's determination of disability and denial of benefits because (1) the ALJ should not have rejected the opinions and limitations of Plaintiff's treating and other physicians when determining Plaintiff's RFC, and (2) the ALJ failed to adequately explain how he arrived at Plaintiff's RFC. Pl.'s Br. 6, 9. The ALJ determined that Plaintiff had the RFC "to perform light work . . . except . . . [she] can sit for up to 45 minutes at a time, after which she must walk around 3 to 4 minutes before resuming sitting." A.R. pt. 1, at 21. Plaintiff acknowledged that she could sit for

"about 45 minutes to an hour before [she would] get up" to "just walk around" or sometimes "go to the bathroom" for "three to four minutes." *Id*. At 54-55. The ALJ listed other limitations to Plaintiff's RFC—occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; cannot constantly bilaterally handle and finger objects; cannot do complex work; have occasional contact with the general public; garner only occasional exposure to pulmonary irritants; and avoid heat extremes. *Id*. at 21. The ALJ determined Plaintiff's RFC "[a]fter careful consideration of the entire record." *Id*.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status."[4] *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a claimant's residual functioning capacity is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). After reviewing the hearing decision and the administrative record, the Court finds the ALJ's RFC determination is supported by substantial evidence and addresses Plaintiff's arguments.

**(1)    The ALJ properly considered the opinions and limitations of Plaintiff's treating and other physicians when determining Plaintiff's RFC.**

---

[4] 20 C.F.R. § 404.1527 provides instruction for evaluating opinion evidence for claims filed before March 27, 2017, like Plaintiff's claim filed on December 28, 2016. *See* A.R. pt. 1, at 17.

Plaintiff first argues that the ALJ should not have rejected the opinions and limitations of Plaintiff's treating and other physicians when determining Plaintiff's RFC. Pl.'s Br. 6. An ALJ should consider every medical opinion. 20 C.F.R. § 404.1527(c); *Kneeland v. Berryhill*, 850 F.3d 749, 759-60 (5th Cir. 2017) (citations omitted). Therefore, the ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citations omitted).

When considering medical opinions, the ALJ generally gives more weight to opinions by examining physicians than physicians who did not examine the plaintiff. 20 C.F.R. § 404.1527(c)(1); *Kneeland*, 850 F.3d at 760 (citations omitted). And the ALJ should give even greater weight to treating physicians' opinions. 20 C.F.R. § 404.1527(c)(2); *Rollins v. Astrue*, 464 F. App'x 353, 355 (5th Cir. 2005). The ALJ can reject any physician's opinion "when the evidence supports a contrary conclusion." *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009). But "fundamentally, the ALJ cannot reject a medical opinion without an explanation." *Kneeland*, 850 F.3d at 760 (citation and internal quotations omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018).

In explaining a rejection of a physician's opinion, the ALJ does not have "to state the weight given to each symptom and diagnosis in the administrative record." *Michelle K. M. v. Berryhill*, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019). An "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision

states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Although there is not a "statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings, § 404.1527(f)(2) does require that the ALJ articulate the weight given to" medical experts. *See Hammond*, 124 F. App'x 847, 851.

The ALJ may assign little or no weight to an "acceptable medical source" or to "a treating physician's opinion" only upon a showing of good cause. *Young*, 689 F. App'x at 822; *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005); *see Kneeland*, 850 F.3d at 760-61 ("Although the [ALJ] is correct that 'when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony,' . . . rejecting a conflicting medical opinion nevertheless requires an explanation."). Good cause exists when the acceptable medical source opinion "is brief or conclusory, not supported by acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Young*, 689 F. App'x at 822. The ALJ considers six factors to determine the degree of weight to afford a medical source opinion. *See* 20 C.F.R. §§ 416.927(c), 404.1527(c); *Luzenia K. v. Saul*, 2020 WL 2574933, at *14 (N.D. Tex. May 20, 2020).[5] The ALJ must

---

[5] The factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion by medical signs and laboratory findings; (4) the consistency of the medical opinion with the record; (5) whether the medical opinion is one of a specialist or not; and (6) any other factors the claimant or others bring to the Commissioner's attention. 20 C.F.R. §§ 416.927(c), 404.1527(c);

engage in a detailed analysis of the relevant factors when "the ALJ rejects the *sole* relevant medical opinion before it" or a treating physician's opinion. *Luzenia K.*, 2020 WL 2574933, at *14 (emphasis in original) (citing *Quall v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam)); *Kneeland*, 850 F.3d at 760.

To arrive at his RFC determination, the ALJ explained that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." A.R. pt. 1, at 21. The ALJ also considered "opinion evidence." *Id.* at 22. Finally, he "reviewed and analyzed all the evidence" including "medical records, whether or not they [were] specifically discussed in the decision." *Id.* at 25.

Plaintiff contends, however, that the ALJ erred when he rejected the opinions of two examining mental health professionals, Dr. Linda Cameron and Dr. Michael Caruso, as well as the opinion of a treating physician, Dr. Don Cheatum. Pl.'s Br. 7; Pl.'s Reply 2 (ECF No. 22). After reviewing the hearing decision and the administrative record, the Court finds the ALJ adequately considered Dr. Cameron's and Dr. Caruso's opinions. While the Court agrees with Plaintiff that the ALJ erred in his consideration of Dr. Cheatum's opinion, the error was harmless because the ALJ's RFC determination is supported by substantial evidence.

    (a)    <u>The ALJ adequately considered Dr. Cameron's opinions.</u>

---

*Luzenia K. v. Saul*, 2020 WL 2574933, at *14 (N.D. Tex. May 20, 2020).

According to Plaintiff, Dr. Cameron "prepared a report, based largely on objective testing . . ., as well as a review of medical records." Pl.'s Br. 3-4. Dr. Cameron's report "also included an extensive list of restrictions and limitations she would associate with Plaintiff." *Id.* at 4. Plaintiff complains that the ALJ "did not acknowledge the testing" Dr. Cameron performed "or discuss the pages of limitations she imposed on Plaintiff." *Id.* at 7.

In contrast to Plaintiff's contention, the ALJ considered Dr. Cameron's records. A.R. pt. 1, at 23, 24. Dr. Cameron, Ph.D., was an examining psychologist. *See id.* at 23. The ALJ points to Dr. Cameron's "mental assessment" that "noted [Plaintiff] had ongoing mental symptoms related to moderate generalized anxiety disorder, major depressive disorder, and somatic symptom disorder," and Plaintiff "was noted to currently be taking psychotropic medications for depressive symptoms with some relief from symptoms." *Id.* at 23. Additionally, the ALJ gave Dr. Cameron's psychological medical opinions "partial, but not controlling weight, with regard to objective findings and examination results." *Id.* at 24. The ALJ explained that Dr. Cameron's opinions "mostly appeared to be speculation based on other substantial evidence." *Id.* The ALJ further states that Dr. Cameron's analysis of Plaintiff's "physical symptoms and impact on her vocational base is entitled no weight." *Id.*

In addition to Dr. Cameron's records, the ALJ considered the opinions of Drs. Jerry Henderson, Ph.D., and Michael Caruso, Ed.D., two other mental health specialists. Therefore, Dr. Cameron's opinions were not the *sole* relevant medical

9

opinions before the ALJ. Indeed, the ALJ considered and attributed weight to at least two other medical opinions from Drs. Henderson and Caruso. Therefore, the ALJ was not required to engage in a detailed analysis of the relevant factors to reject a medical opinion because it was not the only medical opinion before him.

The ALJ was free to assign little or no weight to Dr. Cameron's opinions with a showing of good cause and incorporate only those limitations from Dr. Cameron that were consistent with the weight of the evidence. The ALJ committed no error in giving Dr. Cameron's objective findings and examination results partial, but not controlling, weight because the ALJ concluded Dr. Cameron's findings were speculative. Thus, the ALJ appropriately considered Dr. Cameron's opinions and limitations.

(b) <u>The ALJ adequately considered Dr. Michael Caruso's statements</u>.

According to Plaintiff, Dr. Michael Caruso, Ed.D., also conducted psychological testing of Plaintiff. Pl.'s Br. 4. The profiles that resulted from Dr. Caruso's tests "may . . . underestimate [Plaintiff's] present symptoms and psychological adjustment." *Id.* (internal quotations omitted) (citing Dr. Caruso's Report, A.R. pt. 2, at 180). Plaintiff complains that the ALJ ignored Dr. Caruso's statement that Plaintiff "has difficulty managing routine affairs." Pl.'s Br. 9 (internal quotations omitted) (citing Dr. Caruso's Report, A.R. pt. 2, at 181). Plaintiff argues that the ALJ's RFC determination contradicts Dr. Caruso's statement because the ALJ said Plaintiff "can adapt to changes in a routine work environment." Pl.'s Br. 9 (citing A.R. pt. 1, at 21).

Again, in contrast to Plaintiff's complaint, the ALJ considered Dr. Caruso's assessment and notes. A.R. pt. 1, at 24. The ALJ stated that he reviewed Plaintiff's "treatment notes with Michael Caruso, Ed.D., a[n] examining doctor, [that] indicated in 2017 that [Plaintiff] had mental health symptoms." A.R. pt. 1, at 24. The ALJ indicated that he "had *some doubt* upon [Dr. Caruso's] examination findings." *Id.* (emphasis added). This is unsurprising since Dr. Caruso recorded at length Plaintiff's childhood abuse by her uncle and her alcoholic mother in his report. A.R. pt. 2, at 179-180. However, Plaintiff testified that parts of Dr. Caruso's report were "completely wrong"—specifically, Plaintiff's mother was not an alcoholic, she was never abused, and she does not have an uncle. A.R. pt. 1, at 70-71. And Plaintiff's attorney similarly represented that the underlying facts that Dr. Caruso has in his report are "largely incorrect." *Id.* at 42. The ALJ also explained that the assessment used by Dr. Caruso was "not intended for forensic purposes, such as an assessment of disability or competency or the individual's control over such behavior." A.R. pt. 1, at 24. Accordingly, the ALJ gave Dr. Caruso "limited weight, but not controlling weight, as to his assessment." *Id.*

In addition to Dr. Caruso's opinions, the ALJ considered opinions and limitations from Drs. Cameron and Henderson as well. The ALJ attributed weight to their opinions, too.

This Court cannot resolve conflicts of or reweigh the evidence. The ALJ was free to assign little or no weight to Dr. Caruso's opinions with a showing of good cause and incorporate only those limitations from Dr. Caruso that were consistent

with the weight of the evidence. Dr. Caruso was not a treating physician or the *sole* medical opinion before the ALJ. The ALJ committed no error in giving Dr. Caruso's assessment limited, but not controlling weight because the ALJ expressed doubt as to Dr. Caruso's findings and Dr. Caruso's assessment was not for forensic purposes. Accordingly, the ALJ appropriately considered Dr. Caruso's assessment.

    (c)   <u>Any error by the ALJ in failing to explicitly attribute weight to Dr. Don Cheatum's limitations was harmless</u>.

According to Plaintiff, Dr. Don Cheatum, M.D., "wrote, in records dated September 13, 2016, that '[Plaintiff] has to have a high fluid intake during her working hours because of some of her medications, which *may* require her to have frequent trips to the restroom during her working hours.'" Pl.'s Br. 5 (emphasis added) (quoting Dr. Cheatum's Records, A.R. pt. 1, at 1187). Plaintiff asserts that Dr. Cheatum was a treating physician "as reflected in his physician-patient relationship." *Id.* at 9. Plaintiff complains that the ALJ failed to consider Dr. Cheatum's limitations and "does not appear to acknowledge the *need* for frequent bathroom breaks mentioned by Dr. Cheatum." *Id.* at 8 (emphasis added). Plaintiff argues "[s]ince Dr. Cheatum was a treating physician, the ALJ should have . . . considered the restriction placed on Plaintiff by him."[6] *Id.* at 9.

---

[6] To bolster her argument, Plaintiff points to Dr. Cameron's record on June 29, 2018, when Plaintiff discussed "trouble [at] her State Farm job because her supervisor told her that she was going to [the] bathroom too much." Pl.'s Br. 5 (citing Dr. Cameron's Report, A.R. pt. 2, at 749). Plaintiff worked part-time for State Farm from April 2016 to December of 2016. A.R. pt. 2, at 749. Plaintiff quit the State Farm job "due to her medical problems and significant level of pain," according to Dr. Cameron's report. *Id.* Also, Plaintiff testified that she quit her job

Here, the ALJ did not discuss Dr. Cheatum's limitations or opinions, or explicitly state the weight attributed to them. *See* A.R. pt. 1, at 21-25. The ALJ must articulate the weight given to all medical experts. *See* 20 C.F.R. § 404.1527(f)(2); *see also Hammond*, 124 F. App'x 847, 851. To the extent the ALJ's failure to discuss the weight given to Dr. Cheatum's opinions was an error, the Court considers the error harmless.

A court will vacate the ALJ's decision *only if* the plaintiff's rights are substantially affected because the harmless error doctrine applies to social security cases. *Jones v. Saul*, 834 F. App'x 839, 840 (5th Cir. 2020) (citing *Shineski v. Sanders*, 556 U.S. 396, 407-08 (2009)). Here, the Court considers the ALJ's failure to discuss the weight given to Dr. Cheatum's opinions to be harmless because the ALJ's RFC determination is supported by substantial evidence regardless of Dr. Cheatum's note that Plaintiff *may* need frequent bathroom breaks. *See Jones*¸834 F. App'x at 841-42; *see also Hammond*, 124 F. App'x at 851-52 ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision . . . he likely made the same fact-based judgments that form the basis of our refusal to overturn his decision on substantial evidence review.");

---

at State Farm because she "was losing a lot of weight" and "was having a lot of migraines" and "a lot of pain." A.R. pt. 1, at 53. Plaintiff did not mention to Dr. Cameron or in her testimony that she was terminated or left her job at State Farm due to the frequency or duration of any required bathroom breaks. *See id.*; *see also* A.R. pt. 2, at 749.

*Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (observing that "procedural improprieties . . . will . . . constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision"); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (explaining that, in the context of how the ALJ treats the opinions of physicians, "courts have . . . declined to reverse and remand on procedural grounds when it is clear that the procedural error did not compromise the decision[-]making process" and the ALJ's decision is otherwise supported by substantial evidence).

In this case, Dr. Cheatum said that Plaintiff possibly had a side effect to medication that required frequent bathroom breaks. A.R. pt. 1, at 1187. However, Plaintiff acknowledged that she could sit for "about 45 minutes to an hour before [she would] get up" to "just walk around" or sometimes "go to the bathroom" for "three to four minutes." A.R. pt.1, at 54-55. Plaintiff also testified that she still drives, though it's difficult to drive "maybe more than 45 minutes to an hour." *Id.* at 52. The VE testified that four-minute breaks each hour would not impact unskilled employment. *Id.* at 88-89. Plaintiff testified that she could sit for longer, "maybe two hours," in a softer chair with more back support. *Id.* at 55. Based on the evidence presented by Plaintiff and the VE, more than a scintilla of evidence exists, and thus substantial evidence, that Plaintiff can "sit for up to 45 minutes at a time, after which she must walk around 3 to 4 minutes before resuming sitting." A.R. pt. 1, at 21. Accordingly, the ALJ's error does not cast doubt on the substantial evidentiary support of his RFC determination, and the ALJ's error was harmless.

**(2)    The ALJ adequately articulated the substantial evidence he used to determine Plaintiff's RFC.**

Plaintiff further contends the ALJ failed to adequately explain how he arrived at Plaintiff's RFC. The ALJ is responsible for interpreting the medical evidence to determine Plaintiff's RFC. *Fontenot*, 661 F. App'x at 277 (citation omitted). "The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record." *Gonzales v. Colvin*, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.) (citing 20 C.F.R. § 404.1545(a)(1)).

The Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* (citation omitted); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam). "If supported by substantial evidence, the [ALJ's] findings are deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson*, 402 U.S. at 390).

Here, the Court finds the ALJ's RFC findings are supported by substantial evidence. The ALJ determined Plaintiff's RFC "after careful consideration of the entire record" and having "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence" and "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." A.R. pt. 1, at 21.

Plaintiff "alleged physical and mental impairments related to psoriatic arthritis, osteoarthritis, spine disorder, depressive disorder, and asthma." *Id.* at

22. She complained of "physical pain symptoms in multiple joints due to psoriatic arthritis," "some respiratory symptoms related to asthma," and "mental health symptoms due to depression on a regular basis." *Id.* Plaintiff "also indicated she had difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, concentrating, using hands, and climbing stairs." *Id.*

In determining Plaintiff's physical RFC, the ALJ relied on the medical evidence. The ALJ gave significant weight to the opinions of Drs. James Wright, M.D., and Sharon Keith, M.D. *Id.* at 23-24, 119. Both doctors observed that Plaintiff "can perform light exertional work with no other limitations." *Id.* at 23-24. The ALJ noted that Drs. Wright and Keith's opinions are "somewhat consistent with [Plaintiff's] medical evidence of record indicating limitations to light work." *Id.* at 24. In addition to limitations recommended by Drs. Wright and Keith, the ALJ "assessed a few postural, manipulative, and environmental limitations based on ongoing pain symptoms in the joints and respiratory issues despite adequate medical treatment." *Id.* at 24.

The ALJ also found "inconsistencies in the evidence of record concerning [Plaintiff's] description of her symptoms and limitations." *Id.* Plaintiff alleged "extreme functional limitations." *Id.* But Plaintiff testified that she still drives, even though it is difficult to drive "maybe more than 45 minutes to an hour." *Id.* at 52. Also, she "could probably sit about 45 minutes to an hour before [she would] get up . . . and just walk around" for "three to four minutes." *Id.* at 54. She could sit for longer, "maybe two hours," in a softer chair with more back support. *Id.* at 55.

Plaintiff walks her "dogs around the block." *Id.* She can stand in in place for ten minutes. *Id.* at 56. She can comfortably lift "maybe five to ten pounds," and she can lift a gallon of milk. *Id.* Plaintiff can use buttons on clothes, use her smartphone, read a book, do housework, shop for groceries, prepare meals, shop at stores, and watch television. *Id.* at 57-60, 66-67. She also socializes with people. *Id.* at 66. On the other hand, Plaintiff testified that she has difficulty with typing, using a computer, twisting knobs, turning doorknobs, opening jars, and writing short letters. *Id.* at 56-57, 60-61. She tries to "avoid cleaning at all costs" and cooking. *Id.* at 78-79.

Furthermore, the ALJ noted that Plaintiff's complaints "that her pain level [is] increasing with constant pain" appear to be inconsistent with objective findings. *Id.* at 25. "The objective findings have not changed." *Id.* Plaintiff's condition "does not show deterioration." *Id.* Plaintiff's condition has "stabilized" and her physicians "proceed with only conservative treatment." *Id.* The treatment notes cited by the ALJ concur.

In 2017, treatment notes at Dallas North Pain Relief showed Plaintiff "had chronic back pain symptoms," and a "physical examination showed [Plaintiff] was in no acute distress, had a normal gait, good range of motion, no significant neurological deficits, and she did not require an assistive device in order to ambulate." *Id.* at 22. In late 2017, "a magnetic resonance image (MRI) of the back trace levoscoliosis of the lumbar spine[] but was otherwise relatively normal." *Id.*

In 2018, notes from Dr. Stefan Pribil, M.D., showed "ongoing symptoms of back pain," and "progress notes at Texas Medical and Surgical Associates showed [Plaintiff] had psoriatic arthritis that was mild in nature, in which she had minimal psoriasis and generalized arthralgia." *Id*. at 22-23. While Plaintiff had a history of asthma and respiratory infections, Plaintiff "had lungs clear to auscultation, unlabored breathing, normal breath sounds, and no rales or rhonchi." *Id*. Also, in 2018, a physical exam revealed Plaintiff "had fatigue, mild crepitus in the knees, and some tenderness in the back and lower extremities, but she was in no acute distress, had full motor strength, good range of motion, no swelling, and no significant neurological deficits." *Id*. Citing clinical notes from Dr. Cye Jekel, M.D., and Dallas North Pain Relief, Plaintiff continued to report pain symptoms in the back, neck, feet, hands, knees, jaw, and other joints. *Id*. Based on the treatment notes cited, the ALJ concluded that "the overall medical evidence of record showed relatively normal physical examinations and diagnostic imaging despite ongoing complaints of joint pain symptoms throughout the period of alleged disability." *Id*.

In determining Plaintiff's mental RFC, the ALJ again relied on the medical evidence. The ALJ gave "partial, but not controlling weight" to the "objective findings and examination results" of Dr. Linda Cameron, Ph.D.—even though the ALJ noted that Dr. Cameron's findings "mostly appeared to be speculation based on other substantial evidence." *Id*. at 24. The ALJ also gave limited weight to Drs. Michael Caruso, Ed.D., and Jerry Henderson, Ph.D. *Id*.

Dr. Caruso provided a GAF score of 60 for Plaintiff. *Id.* A GAF score is a clinician's rating of an "individual's overall psychological, social, and occupational functioning on a scale of 0 to 100" at a "snapshot" in time. *Id.* The GAF score is "not intended for forensic purposes, such as an assessment of disability or competency or the individual's control over such behavior. *Id.* A "score of 60 suggests moderate symptoms or moderate difficulty in social, occupational, or school functioning, and represents the high-end of the moderate-range of restriction." *Id.*

Dr. Henderson "completed a psychiatric review technique and a residual functional capacity assessment" and determined that Plaintiff's "mental impairments were not severe." *Id.* The ALJ held that Dr. Henderson's opinion was "inconsistent" with Plaintiff's "severe mental health issues in the record." *Id.*

The ALJ also noted other evidence. For example, in 2017, treatment notes from Dallas North Pain Relief "reflected that mental status examinations were relatively within normal limits." *Id.* at 23. The ALJ recognized "Plaintiff appeared to have relatively average intellectual functioning upon cognitive testing." *Id.* In addition, the ALJ identified "psychiatric counseling notes with Dan Kirkland, LPC-S," that "showed ongoing mental health symptoms through 2018." *Id.* The ALJ recognized Plaintiff had symptoms of depression, anxiety, sadness, crying spells, hopelessness, loneliness, mood instability, and sleep disturbance. *Id.* But Plaintiff "was noted to have some relief with mental health counseling and coping

strategies." *Id*. And Plaintiff "was noted to currently be taking psychotropic medications for depressive symptoms with some relief from symptoms." *Id*.

After reviewing and analyzing "all evidence of record," the ALJ determined that the record does "not sustain [Plaintiff's] allegations of a disabling impairment." *Id*. at 25. The ALJ stated that his RFC "assessment is supported by the objective medical evidence contained in the record." *Id*. The Court agrees. Accordingly, the Court finds the ALJ has appropriately considered and resolved conflicts in the evidence. Substantial evidence supports the ALJ's determination of Plaintiff's RFC.

## Recommendation

Because the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, the Court should AFFIRM the hearing decision in all respects.

August 11, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).